**STATE of Missouri, Respondent,**

v.

**Earl MILLER, Appellant.**

**No. 49203.**

Supreme Court of Missouri,

Division No. 2.

Oct. 8, 1962.

Thomas F. Eagleton, Atty. Gen., Margaret Bush Wilson, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

BOHLING, Commissioner.

█ Earl Miller was convicted of burglary and stealing under the habitual criminal act and sentenced to imprisonment for four years on each charge, said sentences to run consecutively. Consult §§ 560.045, 560.156, and 560.110. (Statutory references are to RSMo 1959, V.A.M.S.) He has appealed but has filed no brief. His motion for new trial is for consideration. An assignment questions the submissibility of the State's case.

Earl Kuehner and his mother left their home at 4661 Adkins Street, St. Louis, Missouri, about 8:00 p. m. March 17, 1961, leaving the doors and windows locked. Arriving home about 12:50 a. m. March 18, they found the glass in the rear door broken and the door open. The front door was also open. The things in his and his mother's rooms were disarranged. His mother's chifforobe had been searched. A metal box (introduced in evidence as State's Exhibit 2) with papers in it had been taken from the desk in his room and left open on his bed. He had four American Express Traveler's Checks, total value $80, in a wallet in his desk. The wallet was left open on his bed, but the checks were missing. He had been required to place his signature on these checks when he purchased them at the bank. Kuehner testified that his collection of coins, valued at $50, a Springfield rifle, value $35, a Winchester rifle, value not stated, a pistol, value $10, his four American Express Traveler's Checks, and his grandmother's golden wedding band had been taken.

The police were notified of the burglary and about an hour later Officer Fred Henke lifted three latent fingerprints from State's Exhibit 2, the metal box, which was still on the bed, onto a tape (State's Exhibit 3). He gave this tape to Officer Gerald Hart on March 22nd, when he next saw him. Several days later Officer Robert Kaelin got the metal box (State's Exhibit 2) from Kuehner and delivered it to Officer Hart.

Harold Sellers was in charge of a service station in East St. Louis, Illinois, between 11:00 p. m. and 7:00 a. m. On the night of March 20, 1961, defendant, in payment for some gas and oil purchased, tendered to Sellers a $20 American Express Traveler's Check (State's Exhibit 1) on which the name of the purchaser had been written over and was illegible. Defendant being unable to identify himself to Sellers' satisfaction and failing to pay, witness called the East St. Louis police. Officer Jerry Sullivan and his partner answered Sellers' call. Sellers gave them State's Exhibit 1 and they took defendant and said exhibit to the East St. Louis Police Station. The following morning defendant was turned over to the St. Louis Police.

Witness Kuehner identified State's Exhibit 1 by his signature and by the number on it as one of the American Express Traveler's Checks taken from his wallet the night of the burglary.

Officer Gerald Hart, whose qualifications as a fingerprint expert were not questioned, testified he took a set of ink impressions of defendant's fingerprints, State's Exhibit 4; that he processed the latent fingerprints (State's Exhibit 3) from State's Exhibit 2, the metal box, and that defendant's right middle and ring finger made the prints on

State's Exhibit 4 and on Kuehner's metal box. This witness explained why and gave his opinion that it was impossible for different persons to have the same fingerprints.

We have not developed all facts favorable to the State.

■ The case was for the jury.

"A motion for a new trial shall be in writing and must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor." Supreme Court Rule 27.20(a), V.A.M.R. Consult § 547.030.

■ Assignments in defendant's motion for new trial that the verdict and judgment "are against the weight of the evidence"; "against the greater weight of the evidence"; "against the concrete and substantial evidence," and that the verdict "is the result of bias and prejudice on the part of the jury" are insufficient to preserve any issue for review. State v. Schramm, Mo., 275 S.W.2d 343[1, 2]; State v. Russell, Mo., 324 S.W.2d 727[14]; State v. Fields, Mo., 293 S.W.2d 952[10].

■ Defendant's motion for new trial assigns error "in admitting into evidence the State's exhibits for the reason that they had" not been properly identified; that the proper foundation had not been laid for their introduction, and that in each instance it was hearsay and in violation of the constitutional rights of the defendant; and in another assignment that error was committed "in not declaring a mistrial when the policeman testified that the defendant had been arrested for another crime" for the reason this was proof of another crime, put the character of defendant in issue and was immaterial and irrelevant as to the issues of this case, and that said statements were only to bias and prejudice the rights of this defendant. Twelve exhibits were introduced in evidence by the State, and seven policemen testified on behalf of the State. The

provisions of Rule 27.20 are mandatory. State v. Tourville, Mo., 295 S.W.2d 1, 4 [1]. One purpose of Rule 27.20 is to narrow the issues on appeal and state in separate paragraphs of a motion for new trial, in detail and with particularity, the same as points are to be presented in a brief, the issues having real merit in an intelligent manner and to avoid questions devoid of merit. Said assignments are too indefinite and do not comply with said Rule 27.20. State v. Thompson, Mo., 299 S.W.2d 468, 471[1] (b); State v. Thorpe, 359 Mo. 796, 223 S.W.2d 479, 480[3]. "Neither this court nor the trial court is required to read the record and speculate what particular instance (or why it constituted prejudicial error) defendant had in mind as falling within a stated conclusion in a motion for new trial or in a brief." State v. Brookshire, Mo., 353 S.W.2d 681, 685 [11]. State v. Gregory, 344 Mo. 525, 127 S.W.2d 408[2]; State v. Linders, Mo., 224 S.W.2d 386, 389[4].

■ The transcript before us discloses that the State's exhibits, some of which are mentioned supra, were properly identified by the State's witnesses and a proper foundation for their admission in evidence was laid before they were admitted. For instance, defendant attempted to have witness Sellers cash one of the American Express Traveler's Checks identified by witness Kuehner as having been taken from the wallet left in his desk. This tended to establish defendant's guilt of the offense charged. State v. Spaugh, 200 Mo. 571, 98 S.W. 55[3], 61; State v. Taylor, Mo., 324 S.W.2d 643, 646[4], 76 A.L.R.2d 671; State v. Fisher, Mo., 302 S.W.2d 902, 905 [2].

Defendant's last assignment is that the court erred "in not declaring a mistrial when a police officer testified" that after talking to another police officer he placed this charge of burglary and stealing against defendant for the reasons this testimony was improper and violated defendant's right of confrontation under the Consti-

tution and laws of this State. We consider the State's presentation of this issue.

Officers Savetz and Rung brought defendant and State's Exhibit 1 to St. Louis March 21st. Defendant was questioned about 2:00 p. m. and denied any participation in this burglary and stealing. He stated that Richard Hayes, of Maplewood, had given him State's Exhibit 1. Witness Kuehner was called to police headquarters March 21st and identified State's Exhibit 1 as one of his missing American Express Traveler's Checks. The officers brought defendant in and Kuehner stated he did not know defendant and defendant said he had never seen Kuehner and had never been in Kuehner's home. The officers were unable to locate Richard Hayes. The following day, March 22nd, defendant was released from custody under a writ of habeas corpus. His trial counsel represented him in that proceeding, and first opened up this fact issue.

Officer Mike Crnkowich testified on direct examination that he spoke to Officer Hart and, over objection that it was hearsay, when asked if he thereafter arrested defendant, answered: "I placed an additional charge on him," stating when the question "Did you arrest defendant" was repeated: "No, sir, I didn't." The court, upon defendant asking for a mistrial, instructed the jury to disregard the answer given to the original question, but refused to declare a mistrial. Then, out of the hearing of the jury, the court asked why this officer had been put on the stand, and was informed defendant was in custody on a totally different charge; that the State was trying to avoid showing that arrest after defendant brought out he had been released from his original arrest for this burglary and stealing, and that the State should be permitted to show that the charge on trial was renewed without disclosing that defendant was also in custody for a different offense. Officer Crnkowich thereafter testified he spoke to Officer Hart and then placed this charge of burglary and stealing against defendant.

This case differs from State v. Chernick, Mo., 278 S.W.2d 741, 747[4], relied on by defendant in the trial court. Chernick was convicted of an assault with intent to kill during a robbery. The State, in its opening statement, in its case in chief, and in its arguments to the jury, stressed that after questioning William Scholl, one of the robbers, subsequent to his capture following the robbery, "there was an arrest order put out for the arrest of" Chernick. This was held hearsay and prejudicial as it tended to show inferentially or circumstantially that Scholl had implicated defendant as a participant in the robbery. Scholl did not testify in the Chernick case. In the case at bar defendant opened up the issue that he had been released from his original arrest for the offense on trial. The State thereupon had the right to meet this fact issue. State v. King, 342 Mo. 975, 119 S.W.2d 277, 283 [11]; State v. Wilson, Mo., 320 S.W.2d 525, 528[3, 4]. Officer Hart, the fingerprint expert, had theretofore testified and his testimony, which was based on facts developed subsequent to defendant's release from his original arrest, established that defendant's fingerprints were on State's Exhibit 2, Kuehner's metal box, and, in connection with other testimony, defendant's participation in this burglary and stealing. Defendant was accorded his right of cross-examining Officer Hart. It is to be presumed and we think it common knowledge that Officer Hart would officially report his findings establishing defendant's connection with the offense on trial. The declaration of a mistrial rests largely in the discretion of the trial court and the circumstances of record do not establish that the court abused its discretion. State v. Bateman, 198 Mo. 212, 94 S.W. 843[9], 846, 847; State v. Taylor, Mo., 324 S.W.2d 643, 646[6, 7].

The foregoing disposes of the assignments in defendant's motion for new trial.

**638**

Our examination of the matters we inquire into under Supreme Court Rule 28.02 discloses no prejudicial error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.